IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT SESSIONS, LINDA SESSIONS, JOHN ROMAN, PAT KOVAR, JOHN SAFIAN and JOE GREEN,** | : CIVIL ACTION NO. 1:07-CV-1669 :  : (Judge Conner) : |
| **Plaintiffs** | : : |
| v. | : : |
| **OWENS-ILLINOIS, INC.**, *et al.*, | : : |
| **Defendants** | : |

## **MEMORANDUM**

This is an employee benefits action brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Plaintiffs, who are former employees of defendant Owens-Illinois, Inc. ("OI"), allege that defendants deprived them of retirement benefits created by OI's Salary Retirement Plan. Defendants have filed a motion to dismiss (Doc. 34) certain counts of the first amended complaint (Doc. 27) on the grounds that plaintiffs seek relief to which they are not entitled under ERISA. For the reasons that follow, the motion will be denied.

I.     **Factual Background**[1]

Plaintiffs allege that defendants deprived them of retirement benefits under the Eighth Amended and Restated Owens-Illinois Salary Retirement Plan (hereinafter "the plan"). Plaintiffs are former employees of Owens-Brockway Plastic Products Group ("Owens-Brockway"), a former subsidiary of OI. (Doc. 27 ¶¶ 27-32.) On October 7, 2004, OI sold Owens-Brockway to Graham Packaging Company ("Graham"). (Id. ¶¶ 2, 41.) Plaintiffs contend that defendants violated ERISA by structuring this transaction in a manner that deprived them of benefits under the plan and by misleading them to believe that they were ineligible for plan benefits to which they were entitled. (See, e.g., id. ¶¶ 43-50, 70-71, 74, 81.)

   A.     **The Sale of Owens-Brockway**

Prior to the merger with Graham, plaintiffs worked at various Owens-Brockway locations and were eligible to participate in the plan. (Id. ¶¶ 27-33.) As a component of the sale, OI and Graham executed a Transaction Agreement by terms of which Owens-Brockway employees would become employees of Graham immediately upon completion of the sale. (Id. ¶ 41.) The agreement did not obligate Graham to retain the transferred employees for any length of time. (Id.) Thus, although plaintiffs became Graham employees when the sale was consummated on October 7, 2004, Graham retained the ability to discharge them at any time.

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint. See infra Part II. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

2

Graham terminated the employment of plaintiffs John Roman, Pat Kovar, John Safian, and Joe Green within two months after the sale. (Id. ¶¶ 9-12.) Graham transferred plaintiffs Robert and Linda Sessions from the Owens-Brockway site in Perrysburg, Ohio to a Graham facility in York, Pennsylvania, several hundred miles away. (Id. ¶¶ 7-8.)

### B.   Enhanced Retirement Benefits under the Plan

At issue is plaintiffs' right to collect an enhanced retirement benefit under the plan. An enhanced retirement benefit is available to OI employees who become "Terminated Retiree[s] as a result of a Reduction in Force."[2] (Doc. 27, Ex. 1 § 8.05(a)(2)). The benefit provides payments to long-serving employees who retire prior to age sixty-five, when all employees become eligible to retire regardless of their length of service. (See id. §§ 1.57-.58 (establishing age sixty-five as the normal retirement age under the plan)). Terminated retirees who elect an enhanced retirement benefit receive graduated payments prior to age sixty-five, calculated based upon their combined age and length of service. (Id. § 8.05(b)). They become eligible for a full benefit upon reaching eighty years of combined age and length of service. (Id.)

---

[2]The plan defines "reduction in force" as "an involuntary Severance from Service because the Employee is terminated as a result of a reduction in personnel, declining business, discontinuance of operations or location closings." (Doc. 27, Ex. 1 § 1.77.) Neither party's briefs address whether the sale of Owens-Brockway qualifies as a reduction in force. Accordingly, the court presumes for purposes of the instant motion that plaintiffs were terminated as a result of such a reduction.

To qualify as a terminated employee, plan participants must accumulate at least ten years of service, attain a combined age and length of service of at least sixty-five years, and "be[] terminated for a reason other than Cause or Resignation." (Id. § 1.91.) The plan defines resignation, in pertinent part, as follows:[3]

> The term "Resignation" means a Severance from Service initiated by, and voluntary on the part of an Employee. . . . An Employee who is employed at an Employment Unit which ceases to be owned or operated by the Employer, and who upon Severance from Service from the Employer *receives a comparable offer of employment from the successor employer* which assumes control of the Employment Unit, will be deemed separated as a Resignation.

(Id. § 1.79 (emphasis added)). In the instant case, plaintiffs assert that they are terminated retirees under the plan and thereby qualify for an enhanced retirement benefit. (Doc. 27 ¶ 51.) They each possess at least ten years of service and a combined age and length of service in excess of sixty-five years, and they contend that they were not terminated for either cause or resignation. (Id. ¶¶ 7-12, 46-49.) The gravamen of their argument is that their post-merger employment with Graham was not "comparable" to their pre-merger employment with Owens-Brockway. (Id. ¶ 50.) They allege that Graham immediately terminated many Owens-Brockway employees and offered retained employees a benefits package less comprehensive than that provided by OI. (Id.) They argue that the two positions are therefore not comparable, placing their discharge beyond the plan's

---

[3]"Cause" is also a defined term under the plan but is not material to the disposition of the instant motion.

definition of "resignation." (Id. ¶¶ 50-51.) Hence, they aver that they qualify as terminated retirees entitled to an enhanced retirement benefit. (Id.)

In advance of the Owens-Brockway sale, OI prepared a document entitled "Plastic Container Sale Employee Frequently Asked Questions" (hereinafter "the Q&A form"), which it distributed to employees affected by the transition. (Id. ¶ 43.) The Q&A form instructed Owens-Brockway employees that they would "automatically become employees of Graham Packaging at the closing." (Id.; Doc. 27, Ex. 2 at 2.) The Q&A form also observed: "As part of the transaction, Graham has agreed to provide salary employees and non-Union hourly employees a cash compensation package that is no less favorable than the package in effect at the closing." (Doc. 27 ¶ 43; Doc. 27, Ex. 2 at 3.) With regard to the enhanced retirement benefit, it advised employees: "Due to the fact that you will be a Graham employee at closing, you will not be eligible for [enhanced retirement benefits].[4] Please note that the elimination of [such benefits] is currently under review for all active O-I employees." (Doc. 27 ¶ 43; Doc. 27, Ex. 2 at 5.) The Q&A form reiterates

---

[4]The altered language from the Q&A form discusses "Reduction in Force benefits" under the plan. (See Doc. 27, Ex. 2 at 5.) These benefits are synonymous with the enhanced retirement benefit sought by plaintiffs, which the plan provides to any employee who is "a Terminated Retiree as a result of a Reduction in Force." (Doc. 27, Ex. 1 § 8.05(a)(2)).

5

information contained in the OI Summary Plan Description ("SPD"),[5] which provides a synopsis of plan benefits and states:

> ENHANCED RETIREMENT—REDUCTION IN FORCE OR TERMINATION OF EMPLOYMENT
> If you have 10 or more years of credited service and your employment is terminated as a result of a reduction in personnel, declining business, discontinuance of operations, location closing, or for reasons other than cause or resignation, and if your combined age and years of credited service equals or exceeds the number 65, you will be entitled to Enhanced Retirement Benefits as a terminated employee.
>
> This benefit is not available to a participant who is terminated by an operation subsequent to the sale or partial sale of that operation; *nor is it available if you are employed (or decline an offer of employment) by a successor employer that assumes control of the location where you work (even if the employment or offer is at another location).* In other words, if the Company's operation or location where you work is sold or otherwise transferred to another employer and you either continue to work there as an employee of the new owner/employer or decline an offer to do so (or to work elsewhere as an employee for the new employer), you will not be eligible for this Enhanced Retirement Benefit when the new employer takes over, and you cannot become eligible for it later.

(Doc. 27 ¶ 48; Doc. 37, Ex. H at 2-3 (emphasis added)).

### C. **Plaintiffs' Claims for Relief and Procedural History**

Plaintiffs argue that they are entitled to an enhanced retirement benefit because their offer of employment with Graham was not comparable to their OI employment. Plaintiffs also claim that the Q&A form and the SPD are misleading because they fail to explain that terminated employees who are denied *comparable*

---

[5] The SPD summarizes benefits available under a plan and the eligibility requirements for receipt of them. 29 U.S.C. § 1022(b). Plan administrators are required to furnish an SPD to all participants and beneficiaries of a plan. Id. § 1021(a)(1).

post-merger employment may qualify for an enhanced retirement benefit. Plaintiffs' amended complaint advances three separate claims arising from defendants' actions and the alleged deficiencies in the Q&A form and the SPD. They first advance a claim against all defendants for denial of benefits. (Doc. 27 ¶¶ 61-66.) Second, they assert a claim for breach of fiduciary duty against all defendants except the plan. (Id. ¶¶ 67-78.) Finally, they claim that OI interfered with their protected rights under the plan. (Id. ¶¶ 79-83.) Plaintiffs seek various forms of relief, including certification of a class and issuance of a declaratory judgment. (Id. prayer for relief.) They also request injunctive relief requiring

defendants to provide them access to enhanced retirement benefits under the plan.[6] Defendants have moved to dismiss the claims for breach of fiduciary duty and interference on the ground that ERISA does not authorize the relief plaintiffs request.[7]  The claim for denial of benefits is not subject to the pending motion.  The parties have fully briefed these issues, which are now ripe for disposition.

---

[6]The complaint contains the following threefold demand for relief:

WHEREFORE, the Plaintiffs pray that the Court granting the following relief on behalf of Plaintiffs and the Class:

* * *

   f)      enjoin the defendants (i) from refusing to provide Plaintiffs and the Class with the Enhanced Benefits and any other benefits to which they were entitled under the Plan; (ii) to award each respective Plaintiff and Class Member the Enhanced Benefit to which he or she is entitled under the Plan; and (iii) to make retroactive and prospective payments of all Enhanced Benefits to Plaintiffs and all members of the Class, including associated retiree medical coverage, make available to them the alternate form of benefit option and social security level payment option provided to participants eligible for the Enhanced Benefit on or before December 31, 2004[.]

(Doc. 1 prayer for relief ¶ f.)  These three demands for relief are, in actuality, duplicative requests that the court enforce the provisions of the plan.  Hence, the court will evaluate them as a single request for enforcement of the benefits to which plaintiffs claim they are entitled.

[7]Defendants also move to dismiss or stay this litigation pending plaintiffs' exhaustion of administrative remedies under the plan.  (Doc. 35 at 12-15.)  Several of plaintiffs' administrative claims remained outstanding at the time defendants filed the motion; however, all plaintiffs have since completed the administrative adjudication process.  (Doc. 64 at 1.)  The motion to dismiss on exhaustion grounds will therefore be denied as moot.

**II.   Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to "give the defendant notice of what the . . . claim is and the grounds upon which it rests." Sershen v. Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); Victaulic Co.

9

v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, --- U.S. at ---, 127 S. Ct. at 1965). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. Discussion

ERISA authorizes a plan participant, beneficiary, or fiduciary to bring suit in federal court "to enjoin any act or practice which violates . . . the terms of the plan" or "to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3)(A)-(B) (emphasis added). Recovery under § 1132(a)(3) is limited to "those categories of relief that were *typically* available in equity," such as injunctive remedies and equitable restitution. Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210-16 (2002); see also Thomas v. Town of Hammonton, 351 F.3d 108, 115 (3d Cir. 2002). Plaintiffs cannot obtain traditional forms of legal redress under § 1132(a)(3), including compensatory damages for breach of contract or fiduciary duty. See Knudson, 534 U.S. at 210 ("A

claim for money due and owing under a contract is quintessentially an action at law." (citation omitted)); Mertens v. Hewitt Assocs., 508 U.S. 248, 256-58 (1993) (holding that compensatory damages are not recoverable under ERISA); Santasania v. Union Travel Trades Benefit Funds of Cent. Pa., No. 3:01-CV-1442, 2003 WL 256778, at *3 (M.D. Pa. Feb. 4, 2003) ("[A] beneficiary's claim for insurance money she claimed she would have received if not for fiduciary's breach of duty was a claim for legal relief, which Knudson forecloses.").

In the instant matter, plaintiff has requested, *inter alia*, enforcement of plan benefits.  Varity Corp. v. Howe, 516 U.S. 489 (1996), illustrates that such relief may be appropriate in certain ERISA cases.  In Varity, the Supreme Court analyzed whether a court could order an employer to reinstate employees into a plan under § 1132(a)(3) to rectify the plan administrator's breach of fiduciary duty.  The defendant, which was the plan administrator and the plaintiffs' employer, created a new corporate subsidiary into which it transferred loss-generating corporate divisions and other undesirable liabilities.  Id. at 493.  It then encouraged employees to transfer their employment and benefits packages from its lucrative corporate divisions to the newly created subsidiary.  Id. at 493-94.  The defendant designed the undercapitalized and debt-ridden subsidiary to implode, thereby absolving many undesirable liabilities, including those owed to the plaintiffs who enrolled in the new corporation's benefits plan.  Id.  When the subsidiary collapsed, the plaintiffs brought suit for breach of fiduciary duty, seeking reinstatement into the plan in which they had formerly participated.  Id. at 492.  The district court granted

11

the requested relief, id. at 495, and the Supreme Court later affirmed, noting that § 1132(a)(3) is "broad enough to cover individual relief for breach of a fiduciary obligation." Id. at 510.  Hence, an order compelling reinstatement of plaintiffs into their prior plan qualified as an "appropriate" remedy for the employer's deception and breach of fiduciary duty.[8]  Id. at 515.

---

[8]The Varity defendants conceded that the relief sought by the plaintiffs was equitable in nature.  Varity, 516 U.S. at 508.  They argued, however, that § 1132(a)(3) only authorized relief for injury to a *plan*, not on behalf of *individual participants*.  Id. at 509.  The Supreme Court disagreed and cautioned against construing § 1132(a)(3) in a manner that deprives a plaintiff of all possible remedies for an ERISA violation: "ERISA's basic purposes favor a reading of [§ 1132(a)(3)] that provides the plaintiffs with a remedy. . . . [I]t is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." Id. at 513.  Moreover, a plaintiff's ability to proceed under other ERISA provisions may obviate the need for equitable relief under § 1132(a)(3).  Id. at 515 ("[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'").

In the case *sub judice*, defendants contend that ERISA forecloses *all* remedies for the breach of fiduciary duty and interference claims.  Were these claims dismissed and the claim for recovery of benefits later foreclosed on procedural or standing grounds, plaintiffs would lack any basis on which to pursue relief for their alleged injuries.  Varity teaches that such a result is inconsistent with both the letter and the spirit of ERISA.  See, e.g., DeVito v. Aetna, Inc., 536 F. Supp. 2d 523, 533-34 (D.N.J. 2008) (stating that a plaintiff may simultaneously maintain claims for recovery of benefits and under § 1132(a)(3) and concluding that the propriety of equitable relief is best confronted in a summary judgment posture); Tannenbaum v. UNUM Life Ins. Co. of Am., No. 03-CV-1410, 2004 WL 1084658, at *4 (E.D. Pa. 2004) (allowing plaintiff to pursue claims under § 1132(a)(3) and for recovery of benefits at dismissal stage).  The issues raised in defendants' motion are more appropriately resolved via summary judgment, at which time the court will be better able to assess the viability of each of plaintiffs' claims and the propriety of the relief requested.

The United States Court of Appeals for the Third Circuit has likewise intimated that equitable relief may be appropriate in certain cases. In Leuthner v. Blue Cross & Blue Shield of Northeastern Pennsylvania, 454 F.3d 120 (2006), the court analyzed a complaint that requested reinstitution of a plan and "such other legal and equitable relief as the court may deem just and necessary." Id. at 127. While dismissing the complaint because plaintiffs lacked standing, the court concluded that they nevertheless had sought equitable relief cognizable under § 1132(a)(3). Id. at 126-27. The court explained that the plaintiffs "request[ed] equitable relief including reinstatement of the Plan 'as it was in existence prior to the changes complained of.'" Id. at 127. Plaintiffs' demand for reinstatement of a former verison of the plan qualified as a petition for appropriate equitable relief because plaintiffs could not receive any benefits absent participation in the plan. Id. at 126 (holding that language requesting reinstatement of benefits and "other legal and equitable relief" seeks an equitable remedy within the ambit of § 1132(a)(3)); accord Adams v. Brink's Co., 261 F. App'x 583, 597 (4th Cir. 2008) ("[I]t does appear equitable and appropriate for the court to order that [the plaintiff] be allowed to rescind his election for early retirement benefits and to reinstate him to the benefits he would be entitled to . . . if he had continued to work until his normal retirement date."); Mathews v. Chevron Corp., 362 F.3d 1172, 1186-87 (9th Cir. 2004) (concluding that an injunction mandating that an employer allow employees to participate in a benefits plan may be equitable in nature).

In the case *sub judice*, plaintiffs contend that defendants misrepresented their benefits under the plan and structured the Owens-Brockway merger in a manner that prevented them from exercising their right to enhanced retirement benefits. They request an injunctive order mandating reinstatement of their eligibility for benefits under the plan. They also seek "such other relief as the Court may deem just or equitable," including imposition of a constructive trust or equitable lien against plan assets to compel defendants to provide the benefits to which they are allegedly entitled. Issuance of an order enforcing the terms of the plan would be neither a form of legal relief nor inappropriate if plaintiffs successfully prove the facts pled in the complaint.[9]

---

[9] Defendants invoke Eichorn v. AT&T Corp., 484 F.3d 644 (3d Cir. 2007) and Ranke v. Sanofi-Synthelabo, Inc., No. Civ. A. 04-1618, 2004 WL 2473282 (E.D. Pa. Nov. 3, 2004) in support of their motion to dismiss. Neither case requires dismissal of plaintiffs' complaint. In Eichorn plaintiffs were employees of a division of AT&T who were terminated during a merger. Prior to their termination, AT&T's subsidiaries maintained mutual agreements that granted their employees "bridging rights." Eichorn, 484 F.3d at 647. These rights allowed an employee who left one subsidiary to credit the employee's length of service toward employment with another subsidiary if no more than six months elapsed between the two positions. Id. In 1996, plaintiffs' division was transferred from one AT&T subsidiary to another. Id. at 646-47. The parties to the transaction agreed that neither would rehire plaintiffs, effectively preventing them from exercising their bridging rights. Id. at 647. Plaintiffs brought an ERISA interference claim under § 1132(a)(3), claiming relief solely in the form of back pay. Id. at 649. The court concluded that they sought merely "to create an obligation to pay the plaintiffs more money," a form of relief beyond the equitable reach of § 1132(a)(3). Id. at 655-56. Eichorn does not compel dismissal of the instant complaint because plaintiffs here request various forms of relief that may qualify as equitable, including enforcement of their benefits under the plan.

Ranke likewise does not mandate dismissal. In Ranke, the plaintiffs were employed by several successive organizations. 2004 WL 2473282, at *1. After one acquisition, plaintiffs were given the option of remaining employed with their

14

Defendants remain free to challenge the equitable nature of plaintiffs' demands at the summary judgment stage, when the court can again assess the

---

current employer or shifting employment to a new one.  They elected to shift employment based in part upon both employers' representations that their length of service would be calculated based upon their total service to all employers in the corporate line of succession.  Id.  Subsequently, the new employer informed them that, due to Internal Revenue Service rules, their length of service could not be aggregated, resulting in decreased benefits.  Id.  Plaintiffs brought suit for breach of fiduciary duty, seeking increased benefits based upon their total length of service. Id. at *5.  They acknowledged that they were not strictly eligible for such benefits but sought recovery of them based upon the employers' misrepresentations.  Id. at *7.  The district court granted the defendants' motion to dismiss, concluding that the plaintiffs' demand was akin to a suit at law for damages resulting from breach of fiduciary duty rather than a claim in equity for enforcement of a benefit to which they were entitled.  Id.; see also Kaliszewski v. Sheet Metal Workers' Nat'l Pension Fund, No. Civ. A. 03-216E, 2005 WL 2297309, at *4 & n.28 (W.D. Pa. July 19, 2005) (distinguishing Ranke's request to enforce continued overpayment of benefits from the Kaliszewski plaintiff's attempt to compel payment of amounts actually owed under the plan and holding that the latter claim is cognizable under § 1132(a)(3)). In the instant case, unlike in Ranke, plaintiffs claim entitlement to benefits created by the plan, and they do not seek benefits in excess of those to which they are entitled.  Hence, Ranke does not mandate dismissal of the instant claims.

15

propriety of the requested relief in light of a fully developed factual record.[10]

Accordingly, the motion to dismiss will be denied.[11]

    An appropriate order shall issue.

                              S/ Christopher C. Conner
                              CHRISTOPHER C. CONNER
                              United States District Judge

Dated:        November 4, 2008

---

[10] Plaintiffs have also requested other forms of relief, including payment of past due benefits and entry of a declaratory judgment. Defendants do not discretely address each of these types of relief, instead asserting in wholesale fashion that *all* relief sought by plaintiffs is of legal character. However, whether a particular form of relief is legal or equitable in nature is largely dependent on the facts of a particular case and cannot be assessed in so sweeping a fashion. In light of the court's ruling with respect to plaintiffs' demand for enforcement of plan benefits, the court declines to rule on the character of these remaining forms of relief. This denial will allow the parties to develop a factual record that reflects the exact contours and practical implementation of each type of relief requested by plaintiffs. Moreover, the fact-sensitive nature of this inquiry counsels that the precise line-drawing necessary to differentiate between legal and equitable redress is appropriately reserved to the summary judgment phase of this litigation.

[11] Plaintiffs have filed a motion for class certification (Doc. 57), the briefing of which has been stayed pending disposition of the instant motion. (See Doc. 60.) The court has likewise stayed discovery. (See Doc. 26.) On April 23, 2008, counsel for defendants transmitted a letter via facsimile to the court and opposing counsel stating that defendants wish to take limited discovery for the purpose of responding to the class certification motion. The following day, plaintiffs' counsel responded that plaintiffs do not oppose limited discovery prior to a determination on class certification. The court will therefore instruct counsel for all parties to meet and confer for the purpose of establishing a limited discovery schedule in advance of class certification. The court will deny the outstanding class certification motion (Doc. 57) without prejudice to plaintiffs' right to refile it in accordance with the schedule that emerges from the parties' negotiations.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT SESSIONS, LINDA SESSIONS, JOHN ROMAN, PAT KOVAR, JOHN SAFIAN and JOE GREEN,** | : CIVIL ACTION NO. 1:07-CV-1669 <br> : <br> : (Judge Conner) <br> : |
| Plaintiffs | : |
| v. | : |
| **OWENS-ILLINOIS, INC.,** *et al.*, | : |
| Defendants | : |

## **ORDER**

AND NOW, this 4th day of November, 2008, upon consideration of defendants' motion to dismiss (Doc. 34) and of plaintiffs' motion for class certification (Doc. 57), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss (Doc. 34) is DENIED in part and DENIED as moot in part as follows:

    a. The motion is DENIED as moot with respect to plaintiffs' failure to exhaust administrative remedies under the Eighth Amended and Restated Owens-Illinois Salary Retirement Plan.

    b. The motion is DENIED in all other respects.

2. The motion for class certification (Doc. 57) is DENIED without prejudice to plaintiffs' right to refile it in accordance with the discovery schedule to be established as required by Paragraph 3.

3. Counsel for all for all parties shall meet and confer to formulate a schedule for limited discovery prior to class certification proceedings. Counsel shall transmit a joint proposed schedule to the court via facsimile at (717) 221-3949 on or before November 14, 2008.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge