**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT SESSIONS, LINDA | : | CIVIL ACTION NO. 1:07-CV-1669 |
| SESSIONS, JOHN ROMAN, | : | |
| PAT KOVAR, JOHN SAFIAN, and | : | (Judge Conner) |
| JOE GREEN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| OWENS-ILLINOIS, INC., *et al.*, | : | |
| | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

Presently before the court is plaintiffs' motion (Doc. 84) for class certification,

in this action filed pursuant to the Employee Retirement Security Act ("ERISA"),

29 U.S.C. §§ 1001-1461. In the above-captioned case, plaintiffs allege that, under the

Eighth Amended and Restated Salary Retirement Plan for employees of defendant

Owens-Illinois, Inc. ("OI") and its affiliated employers, they were entitled to receive

enhanced retirement benefits. They complain that defendants[1] wrongfully denied

them these benefits. For the reasons set forth below, the court will grant plaintiffs'

motion (Doc. 84) to certify a class.

---

[1] The defendants are Owens-Illinois, Inc., the Owens-Illinois Salary
Retirement Plan, the Owens-Illinois Employee Benefits Committee for the Owens-
Illinois Salary Retirement Plan, and various individually-named members of the
committee. The amended complaint alleges that the committee is the administrator
of the plan and a named fiduciary of the plan, and it alleges that each committee
member had responsibility for administering the plan and was a plan fiduciary.
(Doc. 27 ¶¶ 15-16; <u>see also</u> Doc. 104, Proposed Findings of Fact [hereinafter "Def.
FF"] ¶ 4).

# I.     Factual Background & Procedural History

Plaintiffs and all proposed class members are former employees of Owens-Brockway Plastic Products, Inc. ("OB").  (Def. FF ¶ 1; see also Doc. 103, Proposed Findings of Fact [hereinafter "Pl. FF"] ¶ 28, Doc. 85 at 6, 11).  OB was formerly a wholly-owned subsidiary of OI Plastic Products FTS, Inc. ("OI Plastic Products"), a subsidiary of defendant OI.  (Def. FF ¶ 2; Doc. 85 at 10).  All members of the proposed class, by definition, participated in OI's Salary Retirement Plan (the "plan").  (Doc. 85 at 6).  A participant in the plan is eligible for enhanced retirement benefits when he or she qualifies as a "Terminated Retiree," which the plan defines by the following criteria: (1) the participant must have at least ten years of service, (2) the sum of the participant's age and years of service must be at least sixty-five years, and (3) the participant's employment with an OI-affiliated employer must have been "terminated for a reason other than Cause or Resignation."  (Pl. FF ¶ 26; Def. FF. ¶¶ 6-7).

Plaintiffs contend that they became "Terminated Retirees" entitled to receive enhanced retirement benefits as a result of a sale (the "Graham sale"), (see Doc. 85 at 6), in which OI Plastic Products sold 100% of its stock in OB to Graham Packaging Company ("Graham") on October 7, 2004.  (Pl. FF ¶ 29; Def. FF ¶¶ 2, 11).  Under the definition of the proposed class, all class members are participants in the plan, with at least ten years of service, and with a combined age and years of service of at least 65.  (Doc. 85 at 6).  Hence, the proposed class is defined in such a way that all of its members would be eligible for enhanced retirement benefits, provided that

plaintiffs can show that their employment was "terminated for a reason other than Cause or Resignation."[2]

Defendants assert that plaintiffs are not eligible for the enhanced benefits for various reasons,[3] most notably that each plaintiff received a "comparable offer of employment" from Graham. (See Doc. 89 at 7). The plan's definition of "Resignation" encompasses not only the traditional sense of the word, but also provides that "[a]n employee who is employed at an Employment Unit which ceases to be owned or operated by the Employer, and who upon Severance from Service from the Employer receives a comparable offer of employment with the successor employer which assumes control of the Employment Unit, will be deemed separated as a Resignation." (Pl. FF ¶ 26.d; Def. FF ¶ 9). Hence, under this

---

[2] The proposed class is also defined to include only individuals who had not yet reached age 55 at the time of the sale. (Doc. 85 at 6). Although the "Normal Retirement Age" under the plan would be age 65, (see Doc. 85 at 14), the provision for enhanced retirement benefits permits qualifying participants in the plan to retire prior to age 55 and to receive pension payments and retiree medical benefits. By contrast, plan participants who do not qualify for enhanced retirement benefits and choose to retire early receive substantially reduced benefits, and no retiree medical benefits. (See Doc. 85 at 6-7, 14-15). Accordingly, plaintiffs argue that the enhanced retirement benefit was the only option under which any of the proposed class members could retire with a full pension and medical benefits. (Doc. 85 at 15).

[3] In addition to taking the position that plaintiffs received "comparable offer[s] of employment" from Graham, defendants also conclude that plaintiffs are not entitled to enhanced retirement benefits on the basis that the Graham sale was a stock sale, as opposed to an asset sale. (Def. FF ¶¶ 88-89). In fact, in denying plaintiffs' appeals for enhanced retirement benefits, the administrator of the plan originally took the position that the issue of whether an employee received a "comparable offer of employment" was inapplicable, because the Graham sale was a stock sale, rather than an asset sale. (See Doc. 86, Ex. A-1 at 6, Ex. A-9 at 9, Ex. A-12 at 6, Ex. A-15 at 6).

definition, employees who receive a "comparable offer of employment" are not "terminated for a reason *other than* Cause or Resignation." Defendants argue that plaintiffs are in precisely this position, because all of them received the same base salary before and after the sale, and the plan administrators consider only base salary in determining whether an offer of employment is comparable. (Doc. 89 at 21). Accordingly, defendants assert that plaintiffs are ineligible for enhanced retirement benefits. (See Doc. 89 at 7).

In advance of the Graham sale, defendants issued a "Frequently Asked Questions" ("FAQ") document, which stated that enhanced retirement benefits would not be available to OB employees as a result of the sale. (See Doc. 27 Ex. 2 ¶ 28, Pl. FF ¶¶ 33-34). The FAQ document reiterated information contained in OI's "Summary Plan Description," which stated that an enhanced retirement benefit would not be available to an employee who is "employed (or decline[s] an offer of employment) by a successor employer that assumes control of the location where you work (even if the employment or offer is at another location)." (Doc. 37, Ex. H at 2). Plaintiffs contend that this information was misleading.

Plaintiffs filed the above-captioned action on September 12, 2007, and they filed an amended complaint on January 4, 2008. Count I of the amended complaint accuses defendants of failing to provide ERISA benefits, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Count II complains of an alleged breach of

fiduciary duty,[4] in violation of ERISA §§ 404(a) and 405, 29 U.S.C. §§ 1104(a) and

1105, for alleged misrepresentations.  Finally, in Count III, plaintiffs contend that

defendant OI interfered with protected rights, in violation of ERISA § 510, 29 U.S.C.

§ 1140.  In the pending motion, plaintiffs ask the court to certify Counts I and II to

proceed as a class action.

## II.  <u>Standard of Review</u>

Rule 23 of the Federal Rules of Civil Procedure "states that '[a] class action

may be maintained' if two conditions are met: The suit must satisfy the criteria set

forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of

representation), and it also must fit into one of the three categories described in

subdivision (b)."[5]  <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>,

____ U.S. ____, 2010 WL 1222272 (2010) (quoting FED. R. CIV. P. 23).  Determining

whether the specifications set forth in Rule 23 are satisfied requires the court to

engage in a "rigorous analysis[.]"  <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552

F.3d 305, 309 (3d Cir. 2008).  The Third Circuit has made it clear that "the decision

to certify a class calls for findings by the court, not merely a 'threshold showing' by

a party, that each requirement of Rule 23 is met."  <u>Id.</u> at 307.  It has also held that

"the court must resolve all factual or legal disputes relevant to class certification,

---

[4] Count II is brought against all defendants except the Owens-Illinois Salary
Retirement Plan.

[5] The court will more fully explain the requirements of numerosity,
commonality, typicality, and adequacy, as well as the additional requirements
which accompany each of the three categories in Rule 23(b), <u>infra</u> Part III.

even if they overlap with the merits" of the case.  Id.  If, after rigorous analysis and resolution of all relevant disputes, the court finds by a preponderance of the evidence that the requirements of Rule 23 are satisfied, then class certification is appropriate.

**III.**   **Discussion**

The court will examine each criterion for class certification *seriatim* and determine whether plaintiffs have established by a preponderance of the evidence that each one is satisfied.

**A.**   **Rule 23(a)(1): Numerosity**

Rule 23(a)(1) provides that, in order for a representative party to sue on behalf of members of a class, "the class [must be] so numerous that joinder of all members is impracticable[.]"  FED. R. CIV. P. 23(a)(1).  The rule does not articulate any particular number of class members required to satisfy this prerequisite. Plaintiffs estimate that there are approximately 85 individuals, plus their beneficiaries, in the class they have proposed.  (Doc. 101 at 5; Pl. FF ¶ 15). Defendants do not contest that plaintiffs' proposed class satisfies the numerosity requirement.  (See Doc. 104, Proposed Conclusions of Law ¶ 15).  Based on the estimated number of class members, and the likelihood that the class will be geographically dispersed, (see Pl. FF ¶ 16), the court finds that joinder of all class members would be impracticable.  Therefore, this requirement is satisfied.

### B.    Rule 23(a)(2): Commonality

Under Rule 23(a)(2), "questions of law or fact common to the class" must exist as a prerequisite to class certification. FED. R. CIV. P. 23(a)(2). At minimum, "only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the language of Rule 23(a)(2)." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 n.10. (3d Cir. 2009). In support of their argument that common questions exist in the instant case, plaintiffs observe that defendants stated the same rationale for denying enhanced benefits to each of the named plaintiffs. Plaintiffs contend that all members of the proposed class were uniformly affected by defendants' interpretation of the plan and decision that the Graham sale did not entitle any OB employees to enhanced retirement benefits.

Defendants argue that plaintiffs cannot satisfy their burden to show, by a preponderance of the evidence, that common questions of law or fact exist. Quoting Forman v. Data Transfer, Inc., 164 F.R.D. 400 (E.D. Pa. 1995), defendants assert that "courts have been unwilling to find commonality where the resolution of 'common issues' depends on factual determinations that will be different for each class plaintiff." 164 F.R.D. at 403. Defendants also insist that "not every common question . . . will suffice," because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." Kane v. United Indep. Union Welfare Fund, No. 97-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) (quoting Sprague v. Gen. Motors, 133 F.3d 388, 397 (6th Cir. 1998)). Defendants

7

suggest that plaintiffs have not established commonality, because resolution of the issues in the instant case will depend on each class member's unique circumstances, and because plaintiffs have not presented satisfactory common questions of law or fact.

The court concludes that plaintiffs have satisfied the commonality requirement in the instant case. The named plaintiffs share numerous questions of law or fact with the class, and the court is not persuaded that these questions are too abstract or too dependent on individualized factual determinations to make class certification inappropriate. Common questions presented in the instant case include the following:

- Should plaintiffs' eligibility for enhanced retirement benefits be determined according to the plan as it existed on October 7, 2004, the date of the Graham sale, or according to the Eighth Amendment to the Eighth Amended and Restated Owens-Illinois Salary Retirement Plan?[6]

- Assuming that defendants may argue that plaintiffs are not entitled to enhanced retirement benefits on the basis that they received "comparable offer[s] of employment" from Graham,[7] what factors determine comparability of employment?

- Upon the sale of OB to Graham, were plaintiffs entitled to and wrongfully denied enhanced retirement benefits?

---

[6] The Eighth Amendment to the plan was executed on December 15, 2004, but it purported to revise the "List of Covered Employers" retroactively and to remove OB from the list effective October 7, 2007. (See Pl. FF ¶¶ 22-23).

[7] As discussed infra, note 10 and accompanying text, plaintiffs contend that defendants should not be permitted to defend their denial of benefits on the basis of comparability of employment.

8

- Are defendants (other than the plan itself) fiduciaries to plaintiffs under ERISA? If so, did they breach their fiduciary duties? Did they make false and misleading representations to plaintiffs? Did plaintiffs rely on defendants' representations to their detriment?

This is not an exhaustive list of the common questions presented in the instant case, but it is illustrative of the fact that there are questions of law or fact common to the class which are sufficient to satisfy the commonality requirement.

### C.   <u>Rule 23(a)(3): Typicality</u>

Rule 23(a)(3) requires that "the claims . . . of the representative parties" must be "typical of the claims . . . of the class[.]" FED. R. CIV. P. 23(a)(3). Plaintiffs argue that the class representatives' claims are typical of the claims of the other class members because they arise out of the same occurrences (e.g., the Graham sale) and the same alleged misinterpretation of the same retirement plan. (Doc. 85 at 30).

Defendants contend that the named plaintiffs do not present claims which are typical of the putative class members. (Doc. 89 at 28). Indeed, this alleged lack of typicality is central to defendants' opposition to class certification—most of

defendants' arguments have at least some bearing on the issue of typicality.[8]

Defendants assert that class certification would be inappropriate in the instant case because "the ultimate resolution" of plaintiffs' claims "will turn on facts and legal theories unique to each putative class member[.]" (Id. at 22).  More specifically, defendants argue that plaintiffs' fiduciary misrepresentation claim requires plaintiffs to prove each individual class member's detrimental reliance, and that this claim is thus inappropriate for class certification.  (Id. at 30).  Defendants contend that the named plaintiffs' evidence of reliance would not be typical of the putative class members' evidence of reliance, because the named plaintiffs sought administrative relief and initiated litigation in response to defendants' determination that they were not entitled to enhanced retirement benefits, while

_____

[8] Some of defendants' arguments which would be more pertinent to class certification under Rule 23(b)(3), where a requirement known as predominance applies.  See infra Part III.E.  For example, defendants cite Hydrogen Peroxide, 552 F.3d at 311-312, for the proposition that class certification would be improper in a case in which the cause of action requires individualized proof.  (See Doc. 89 at 7, Doc. 104, Proposed Conclusions of Law ¶ 10).  However, the Hydrogen Peroxide court stated this holding in the context of a discussion of the predominance requirement, which applies under Rule 23(b)(3).  See 552 F.3d at 310-312; see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (holding the same, in the context of explaining Rule 23(b)(3)'s predominance requirement).

In this case, for the reasons discussed infra Part III.E, the court concludes that class certification under Rule 23(b)(1) is suitable.  Therefore, the court need not consider whether plaintiffs have satisfied the predominance requirement or any other requirement which applies only under Rule 23(b)(2) or (b)(3).  Nevertheless, defendants' concern that plaintiffs' claims will require individualized proof is an issue that the court must address insofar as it suggests that the claims of the class representatives are not typical of the claims of other class members.

the putative class members took no such actions.[9]    (Doc. 95 at 9).  With respect to

plaintiffs' claim for benefits, defendants predict that plaintiffs' "interests in defining

'comparable' employment will spawn intractable conflicts between the Plaintiffs

themselves and the putative class members."  (Doc. 89 at 28).  Although plaintiffs

argue that defendants should not be permitted to defend their decision to deny

benefits to the plaintiffs on the rationale that Graham offered "comparable"

employment to plaintiffs, defendants contest this "waiver" argument, and they

---

[9] Defendants do not argue that the putative class members should have
exhausted their administrative remedies, although it would appear that plaintiffs
anticipated such an argument from defendants.  Plaintiffs cite <u>Thomas v.
SmithKline Beecham Corp.</u>, 201 F.R.D. 386 (E.D. Pa. 2001), for the proposition that
"in the context of an ERISA class action, only the *named plaintiffs* must exhaust
their administrative remedies."  <u>Id.</u> at 395 (emphasis in the original) (citing FRANK
CUMMINGS, ERISA LITIGATION: AN OVERVIEW OF MAJOR CLAIMS AND DEFENSES,
SF76 ALI-ABA Course of Study 353, 521 (2001)).

Although defendants do observe that the putative class members never
pursued administrative relief, they do not argue that plaintiffs' claims are barred for
failure to exhaust.  Rather, this observation arises from plaintiffs' argument that, for
the purpose of their breach-of-fiduciary-duties claim, detrimental reliance should
be presumed.  It is plaintiffs' position that, because the putative class members did
not seek administrative or judicial review of their claims to benefits, the court can
presume that they relied to their detriment upon defendants' misrepresentations.
Defendants contend that no such presumption would be proper, because the named
plaintiffs *did* seek relief.  (Doc. 95 at 9).

contend that it could not possibly extend to the entire class.[10]  (Doc. 95 at 5, 7).

Thus, this dispute also contains an issue of typicality.

The Third Circuit has articulated three distinct components that a court

should consider in determining whether the typicality requirement is satisfied:

> (1) the claims of the class representative must be generally the same as
> those of the class in terms of both (a) the legal theory advanced and (b)
> the factual circumstances underlying that theory; (2) the class
> representative must not be subject to a defense that is both
> inapplicable to many members of the class and likely to become a
> major focus of the litigation; and (3) the interests and incentives of the
> representative must be sufficiently aligned with those of the class.

Schering Plough, 589 F.3d at 599.  The court will examine these components

*seriatim*.  For the reasons discussed below, the court finds that all of these

components establish that typicality exists in the instant case.

### 1.    __Similarity of Claims__

The legal theory advanced by the class representatives is indeed the same as

the class members' legal theories in the instant case.  With respect to Count I, they

---

[10] Plaintiffs assert that the administrator of the plan did not rely on job
comparability as a basis for denying enhanced retirement benefits to plaintiffs, and
in fact, the administrator said that post-sale employment was irrelevant to
determining eligibility for the benefits.  (Doc. 92 at 3-8); see also supra note 3.
Plaintiffs argue that, because defendants never raised the comparability issue until
after plaintiffs filed their first motion for class certification, defendants should not
be permitted to litigate the comparability issue.
Defendants maintain that plaintiffs must "demonstrate a lack of
comparability between [each plaintiff's] pre- and post-Owens-Illinois employment."
(Doc. 95 at 5).  In addition, defendants observe that the putative class members
never sought administrative review of the denial of benefits, and defendants
contend that they could not have waived any defenses with respect to individuals
who never pursued the available administrative procedures.  (Id. at 5, 7).

all seek to establish that they are entitled to enhanced retirement benefits, and that

defendants are liable under ERISA for failing to provide these benefits.  For

purposes of Count II, plaintiffs and the entire putative class share the theory that

defendants (except for the plan itself) owed them fiduciary duties, and that they are

liable for breaching their fiduciary duties by misleading the class.  There is no

indication that the class representatives' legal theories differ from those of the class

in any significant respect.  Indeed, defendants point out many differences in the

factual circumstances of the individual class members, but no differences in their

legal theories.

Turning to the factual circumstances supporting plaintiffs' claims, the court

recognizes that a number of factual differences exist.  The class members worked in

various positions, for various salaries, in various locations, and some class members

were discharged, at various points in time after the Graham sale, while others

continue to work for Graham.  However, the existence of divergent factual

situations does not necessarily make a case an improper candidate for class

certification.  The Third Circuit has held that "factual differences between the

proposed representative and other members of the class do not render the

representative atypical 'if the claim arises from the same event or practice or course

of conduct that gives rise to the claims of the class members.'" Schering Plough, 589

F.3d at 598 (quoting Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir.

1992)).

The court finds that, in the instant case, the claims of the proposed representatives and the other putative class members do "arise[] from the same events" and the same "course of conduct." The Graham sale and the events surrounding it (e.g., dissemination of the FAQ document) gave rise to the claims of all the class members—the proposed representatives and the others. In addition, all of the class members worked for the same employer, who engaged in the same course of conduct—in particular, disseminating information about the retirement plan, and interpreting and enforcing the policies contained in the plan in a uniform manner. The court also notes that counsel for plaintiffs have resolved to pursue plaintiffs' claims with only the support of evidence that is common to the class, if the class is in fact certified. (Doc. 101 at 20-23, 73-76). Accordingly, the court is not persuaded that the differences in the class members' factual circumstances render the proposed class representatives atypical of the other class members.

## 2.    Absence of Unique Defenses

There is no indication that any of the class representatives in the instant case are "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation[.]" See Schering Plough, 589 F.3d at 599. Therefore, no further discussion of the second component articulated in Schering Plough is warranted; it does not suggest a lack of typicality in this case.

## 3.    Alignment of Interests and Incentives

Defendants argue that the members of the proposed class have varying interests in defining "comparable" employment, and that their differences "will

14

spawn intractable conflicts[.]" (Doc. 89 at 28). According to defendants, "each Plaintiff has an interest in demonstrating that the differences in his or her specific factual circumstances should weigh more heavily in this Court's analysis than others." (Id. at 29.) The court, however, is not persuaded that any plaintiff would have an interest in de-valuing or minimizing the significance of any factor that might determine comparability of employment. There is no apparent reason why each plaintiff would not rather argue that a plethora of factors—some of which apply to that particular plaintiff, and some of which do not—must be considered in evaluating comparability. Hence, the court is not convinced that plaintiffs' interests are divergent. Furthermore, as noted above, in the event that a class is certified, plaintiffs' counsel will rely solely on evidence that is common to the class. (Doc. 101 at 20-23, 73-76). Therefore, the court determines, based on a preponderance of the evidence, that plaintiffs' interests and incentives are aligned.

### D. Rule 23(a)(4): Adequacy

Under Rule 23(a)(4), the parties representing the class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Third Circuit has identified two components of the adequacy inquiry. The first component "tests the qualifications of the counsel to represent the class[,]" and the second aims "to uncover conflicts of interest between named parties and the class they seek to represent[,]" Schering Plough, 589 F.3d at 602 (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004)). The court will address these components in turn.

15

### 1.   __Adequacy of Counsel__

In the instant case, defendants do not contest that plaintiffs' counsel are experienced with both class actions and ERISA litigation. However, defendants have called the adequacy of plaintiffs' counsel into question on the basis of "[p]laintiffs' willingness to abandon evidence that may support the claims of individual class members[.]" (Doc. 105 at 7). Defendants argue that plaintiffs' counsel have acknowledged the importance of individualized evidence, insofar as each plaintiff must prove that Graham's offer of post-sale employment was not comparable to his or her pre-sale employment, and yet plaintiffs' counsel will not offer such individualized evidence if the court certifies a class in the instant case. (Def. FF ¶ 101).

Notwithstanding this argument, the court is confident that an able, experienced[11] team of attorneys such as the ones representing plaintiffs will provide adequate representation. The arguments that plaintiffs' counsel made at the court's hearing on class certification demonstrate that plaintiffs' counsel have considered the cost and inefficiency of separate actions, (Doc. 101 at 25), and decided that it would be more advantageous to pursue a class action, without presenting individualized evidence, (Doc. 101 at 21-23). Plaintiffs' counsel may sacrifice one or more possible litigation tactics for the sake of a preferable tactic—as litigants routinely do—without casting into doubt their ability to provide zealous

---

[11] Plaintiffs' counsel's experience is set forth at Doc. 85, Exs. B and C.

representation of plaintiffs' claims. Therefore, the court finds by a preponderance of the evidence that plaintiffs' counsel are adequate to represent the proposed class.

### 2. Existence of Conflicts

In the second part of its inquiry into adequacy, the court should look for "conflicts of interest between named parties and the class they seek to represent[,]" Schering Plough, 589 F.3d at 602 (quoting Warfarin Sodium, 391 F.3d at 532). The issues discussed supra, Part III.C.3, in the context of the typicality inquiry, are relevant to this component of the adequacy requirement as well. See Beck v. Maximus, Inc., 457 F.3d 291, 296 (3d Cir. 2006) (noting that "the typicality and adequacy inquiries often 'tend[] to merge'" and that "certain questions . . . are relevant under both"). For the reasons articulated above, the court is not convinced that any purported conflicts of interest preclude class certification in the instant case. Rather, the court determines that the adequacy requirement is satisfied.

### E. Rule 23(b): Type of Class Action

Plaintiffs argue that the above-captioned case could proceed as a class action pursuant to Rule 23(b)(1), (b)(2), or alternatively, (b)(3). Additional requirements accompany each of these categories of class actions. In order for the court to certify a class under Rule 23(b)(1), the court must find that "prosecuting separate actions by or against individual class members would create a risk of" either of the following:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

17

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

FED. R. CIV. P. 23(b)(1).  Class certification under Rule 23(b)(2) requires a determination that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  FED. R. CIV. P. 23(b)(2).  Finally, Rule 23(b)(3) permits certification of a class where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).  These twin requirements are known as predominance and superiority. Hydrogen Peroxide, 552 F.3d at 310.  In order for a class to be certified, the action must fit into one of the categories described above.  Shady Grove Orthopedic Assocs., ____ U.S. at ____, 2010 WL 1222272.

The court will first examine whether class certification under Rule 23(b)(1) would be appropriate.  Rule 23(b)(1) requires the court to consider the risk of prejudice or harm that would arise from separate adjudications.  Defendants argue that plaintiffs "must establish that there is a *realistic probability* of separate actions being brought in the absence of a class action."  (Doc. 89 at 31 (citing Bunnion v. Consol. Rail Corp., No. 97-4877, 1998 WL 372644, *13 (E.D. Pa. May 14, 1998))).  Defendants observe that, even though several years have passed since the Graham sale, only the named plaintiffs have initiated litigation concerning their entitlement

to enhanced retirement benefits. (Doc. 89 at 32). Nevertheless, the court finds that there is a realistic probability of separate actions being brought if a class is not certified in this action. Indeed, at the hearing on class certification, plaintiffs' counsel stated that "it is absolutely a certainty that there will be additional complaints filed if this class action does not go forward." (Doc. 101 at 25).

The court is also persuaded that separate adjudications would create a risk of prejudice to plaintiffs. If plaintiffs were to litigate their claims in separate actions, there would indeed be a danger that "adjudications with respect to individual class members . . . would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]" FED. R. CIV. P. 23(b)(1)(B). This risk would arise because of the nature of plaintiffs' claims. As noted above, plaintiffs would all advocate the same legal theory, with claims arising from the same events and the same course of conduct. Adjudication of their claims would require a court to evaluate defendants' conduct, which was uniform with respect to each plaintiff, and to interpret certain provisions of the plan in which all plaintiffs participated. Accordingly, there is a very real danger that an adjudication in which one plaintiff participated would

affect other plaintiffs' ability to protect their own interests.  Rule 23(b)(1)(B) therefore permits a class action to be maintained.[12]

## IV.  <u>Conclusion</u>

The court finds that plaintiffs have established, by a preponderance of the evidence, that the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are satisfied in the instant case.  <u>See</u> Fed. R. Civ. P. 23(a).  The court further finds that a class action may be maintained under Rule 23(b)(1), because of the risk that separate adjudications of plaintiffs' claims "would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]"  Fed. R. Civ. P. 23(b)(1)(B).  Therefore, the court will certify a class in the above-captioned case.

An appropriate order will issue.

_S/ Christopher C. Conner_
CHRISTOPHER C. CONNER
United States District Judge

Dated:        April 16, 2010

---

[12] Because Rule 23(b)(1) permits class certification, there is no need for the court to consider whether the requirements of Rule 23(b)(2) or (b)(3) are satisfied.  It is sufficient that the instant case "fit[s] into *one* of the three categories described in subdivision (b)."  <u>Shady Grove Orthopedic Assocs.</u>, ____ U.S. at ____, 2010 WL 1222272 (emphasis added).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT SESSIONS, LINDA     :     CIVIL ACTION NO. 1:07-CV-1669
SESSIONS, JOHN ROMAN,     :
PAT KOVAR, JOHN SAFIAN, and  :     (Judge Conner)
JOE GREEN,     :
     :
           **Plaintiffs,**    :
     :
          **v.**     :
     :
OWENS-ILLINOIS, INC., *et al.*,    :
     :
          **Defendants**    :

## ORDER

AND NOW, this 16th day of April, 2010, upon consideration of plaintiffs'

renewed motion for class certification (Doc. 84), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that the motion (Doc. 84) is

GRANTED as follows:

1.     The above-captioned case is CERTIFIED as a class action under Federal Rule of Civil Procedure 23(b)(1)(B).

2.     The class in the above-captioned case is DEFINED as all persons who, as of October 6, 2004: (a) were Owens-Illinois Salary Retirement Plan participants; (b) were employees of Owens-Illinois, Inc.'s blow-molded Plastic Container business (as referred to in the document attached as Exhibit 2 to the Amended Complaint, entitled "Plastic Container Sale Employee Frequently Asked Questions"); (c) had ten years of credited service; (d) had combined age and credited years of service of 65 or more; (e) were less than 55 years old; and (f) worked in the United States; together will all beneficiaries of such persons. See FED. R. CIV. P. 23(c)(1)(B).

3.     The class claims in the above-captioned case are DEFINED as those claims presented in Counts I and II of the amended complaint in the above-captioned case, alleging violations of 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. §§ 1104(a) and 1105. See FED. R. CIV. P. 23(c)(1)(B).

4.	Carol A. Mager, Esquire, and Sidney L. Gold, Esquire, are APPOINTED class counsel in the above-captioned case.  See FED. R. CIV. P. 23(c)(1)(B), (g).

5.	The parties are directed to meet and confer on the subject of notice to the class.  See FED. R. CIV. P. 23(c)(2)(A).  The parties shall submit to the court their proposed notice to the class.



	 S/ Christopher C. Conner
	CHRISTOPHER C. CONNER
	United States District Judge